UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| HILARY GRUBBS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:19-cv-00211-SEB-DML |
| ) | |
| GROTE INDUSTRIES, LLC, ) | |
| ) | |
| Defendant. ) | |

**ORDER DENYING ATTORNEY'S FEES**

After successfully moving for summary judgment on Plaintiff Hilary Grubbs' Title VII claim, Defendant Grote Industries, LLC has requested an award in excess of $210,000 as attorney's fees and expenses to reimburse it for having to defend itself against Plaintiff's unfounded lawsuit. Title VII provides that a "prevailing party" may recover reasonable attorneys' fees, subject to the court's discretion. 42 U.S.C. § 2000e-5(k). However, a prevailing Title VII defendant generally does not recover attorney's fees, except in "very narrow circumstances." *Eichman v. Linden & Sons, Inc.*, 752 F.3d 1246, 1248 (7th Cir. 1985). Specifically, "a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation . . . or that the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 421−22 (1978). In sum, "defendants should receive fees in Title

1

VII cases only in fairly extreme circumstances." *Akrabawi v. Carnes Co.*, 152 F.3d 688, 697 (7th Cir. 1998).

## I. FACTUAL BACKGROUND

Plaintiff is employed by the Defendant—a plastic injection molding company—as a mold setter, a position which is responsible for setting up the machines that inject plastic into the molds, changing the molds, and filling out the requisite paperwork. Plaintiff is one of eight mold setters and the only female. On February 26, 2019, Defendant suspended Plaintiff for five days because "she purportedly resisted instructions from her supervisor to place part numbers on a mold setter check list sheet on February 21, 2019." Docket No. 69, at 2. Plaintiff contends that "the reason given for the suspension—insubordination—was a pretext," and "the real reason for the suspension was based on upper management's desire to terminate her because of her sex." *Id.* at 4. Plaintiff believed the company's justification was pretextual because "other similarly situated male mold setters were never disciplined for failing to put part numbers down, even though they were directed to do so, and this failure to put the part numbers down also constituted 'insubordination' without management taking any type of disciplinary action against them." *Id.* at 5. Plaintiff filed a union grievance regarding her suspension, and instead of moving forward to arbitration, the union requested her suspension be reduced to a written warning. Defendant agreed to reduce the suspension to a written warning in order to settle the matter, and also agreed to pay Plaintiff's back pay to cover the five-day suspension.

Plaintiff filed a charge of sex discrimination with the Equal Employment Opportunity Commission (EEOC), which was "unable to conclude that the information obtained establishes violations of the statutes." Docket No. 49-15, at 1. However, that finding "[did] not certify that the respondent is in compliance with the statutes." *Id.* at 2. Thus, the EEOC notified Plaintiff of her right to proceed with a sex discrimination lawsuit under Title VII against Defendant within 90 days, which action Plaintiff took in by filing her complaint in this court. Defendant moved for summary judgment, and after careful review of the record, we concluded that Plaintiff's Title VII claim could not survive because the "evidence fail[ed] to establish that her suspension for insubordination was related either directly or indirectly to her gender." Docket No. 69, at 15. The court rejected Plaintiff's reliance on a comment that was allegedly described to her as "sexist" because there was no corroborating evidence establishing that it was even said, no detail as to what precisely was said, nor, assuming it was said in the manner Plaintiff alleged, that it had any connection to her suspension. The court also rejected Plaintiff's reliance on the lack of disciplinary action taken against the male mold-setters who failed to record the part numbers because failure to record part numbers was not the basis for her suspension—it was her insubordination. Finally, the court rejected Plaintiff's reliance on a three-day suspension of another employee who was not similarly situated to the Plaintiff.

As the prevailing party, Defendant now seeks $209,537 in attorneys' fees and $2,125.33 in expenses, characterizing Plaintiff's claim as frivolous, unreasonable, and/or groundless. Defendant argues that "Plaintiff's decision to pursue this litigation after

3

resolving the matter in the grievance process, and after the EEOC dismissed the charges, warrants the imposition of attorneys' fees." Docket No. 89, at 6. Defendant also point to the fact that Plaintiff stated during her deposition that she "never denie[d] having committed the acts which were construed as insubordination by her supervisors." *Id.* at 6. "Plaintiff disregarded the facts, or lack thereof, and continued with the lawsuit" after it became "apparent that her dispute about the suspension had been addressed and the relief she had requested had been granted." *Id.*

## II. DISCUSSION AND DECISION

We begin by rejecting Defendant's description of Plaintiff's Title VII claim as frivolous, unreasonable, or groundless, primarily because she pursued her legal action after the EEOC itself was unable to conclude whether a violation occurred. Title VII does not provide the EEOC with direct powers of enforcement—the EEOC cannot adjudicate claims or impose administrative sanctions—instead, "final responsibility for enforcement of Title VII is vested with federal courts." *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44 (1974). Courts retain their "broad remedial powers despite a Commission finding of no reasonable cause to believe that the Act has been violated." *Id.* "In addition to reposing ultimate authority in federal courts, Congress gave private individuals a significant role in the enforcement process of Title VII." *Id.* at 45. Indeed, these private rights of action are an "essential means of obtaining judicial enforcement of Title VII," and in such cases, "the private litigant not only redresses his own injury but also vindicates the important congressional policy against discriminatory employment

4

practices." *Id.* Accordingly, the Seventh Circuit has "declin[ed] to hold that a plaintiff who files a lawsuit after the E.E.O.C. has found no reasonable cause to believe that the charges are true is presumed to be filing a frivolous lawsuit." *Eichman*, 752 F.3d at 1249. "To do so would inhibit the bringing of many private Title VII lawsuits, thereby frustrating Congress' desire to encourage the enforcement of Title VII through the private attorney general concept." *Id.*

We also reject Defendant's argument that Plaintiffs' case was frivolous when she pursued it even after having pursued the grievance process under her collective bargaining agreement. "Title VII does not speak expressly to the relationship between federal courts and the grievance-arbitration machinery of collective-bargaining agreements," but again, Title VII "vest[s] federal courts with plenary powers to enforce the statutory requirements; and it specifies with precision the jurisdictional prerequisites that an individual must satisfy before [they are] entitled to institute a lawsuit." *Alexander*, 415 U.S. at 47. "There is no suggestion in the statutory scheme that a prior arbitral decision either forecloses an individual's right to sue or divests federal courts of jurisdiction." *Id.* at 49. In submitting a grievance, "an employee seeks to vindicate [their] contractual right under a collective-bargaining agreement." *Id.* "By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress." *Id.* at 49−50. "The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence." *Id.* at 50. "And certainly no inconsistency results from permitting both rights to be enforced in their respectively appropriate forums." *Id.* Because an individual does

5

not forfeit their Title VII cause of action if they first pursue their "grievance to final arbitration under the nondiscrimination clause of a collective-bargaining agreement," it would be incongruous to consider Plaintiff's claim frivolous simply because she brought it after achieving a resolution of her grievance in a contractual forum. *Id*. at 49.

Having rejected both of these arguments, we turn to address Defendant's more general argument that it is entitled to attorney's fees because "Plaintiff had no grounds or reasonable basis for pursuing this action." Docket No. 89, at 7 (citing *Vargas v. Borg Warner Automotive Sys.,* 2002 WL 424968, at *2 (S.D. Ind. Feb. 26, 2002)). Defendant has not pointed to any factually analogous case in which a Title VII defendant was awarded attorney's fees. The single case Defendant does point to—*Vargas v. Borg Warner Automotive Systems*—is markedly different from the case at hand. *Id.* In *Vargas*, this court found the defendants were entitled to attorney's fees incurred against plaintiffs' frivolous, unreasonable, and groundless Title VII claims when plaintiffs "filed no response at all" to the defendants' motion for summary judgment, thus failing to make any showing whatsoever that plaintiffs had any reasonable basis for asserting or pursuing any claims against the defendants. 2002 WL 424968, at * 2 (citing *Turner v. Sungard Business Systems, Inc.,* 91 F.3d 1418, 1423 (11th Cir. 1996) (affirming award of attorney fees to defendant in Title VII case where plaintiff failed to respond to defendant's summary judgment motion). Here, Plaintiff adequately responded to Defendant's Motion for Summary Judgment, and further explained her reasons, in response to the instant motion, why she believed she had a reasonable basis to pursue this claim against the Defendant.

6

"True, it was ultimately revealed that [Plaintiff's] evidence established that [her] case was weak at best—so weak, in fact, that no triable issues of fact could be discerned and [Defendant was] entitled to summary judgment in the entirety." *Roger Whitmore's Auto Services, Inc. v. Lake County, Ill.*, 424 F.3d 659, 675-76 (7th Cir. 2005). "But a weak case does not a frivolous case make." *Id.* at 676. Courts have been "careful to distinguish between claims that were ultimately found to be without merit and those 'frivolous, unreasonable or groundless' claims within the meaning of *Christiansburg*." *Badillo v. Central Steel & Wire Co.*, 717 F.2d 1160, 1164 (7th Cir. 1983). As a result, "fees that have been assessed have been limited to situations where plaintiff's conduct was abusive, or merely a disguised effort to harass or embarrass the defendant." *Id.* Defendant has not claimed, let alone shown, that Plaintiff's "conduct was abusive, or merely a disguised effort to harass or embarrass the defendant." *Badillo*, 717 F.2d at 1164.

Defendant argues in addition that it was frivolous for Plaintiff to continue pursuing this lawsuit after admitting that she "never denie[d] having committed the acts which were *construed as insubordination* by her supervisors." Docket No. 89, at 6 (emphasis added). Despite this admission, Plaintiff still disputed the legitimacy of the insubordination reason provided to her by Defendant to explain her suspensions "because her responses to [her supervisor] were just jokes" and she "never verbally refused to put the part numbers on the sheet." Docket No. 69, at 3, 7. Plaintiff maintains that this reason was pretext for her gender and sought to prove it based on an allegedly "sexist" comment that was allegedly made by someone about trying to get her fired as well as through the treatment of other male employees. Plaintiff's ultimate inability to provide factual support

7

for her claim does not, by that fact alone, make her claim frivolous or groundless; it was "conceivable that facts could have arisen during the course of discovery or trial which would have led to" Plaintiff's success. *Leffler v. Meer*, 936 F.2d 981, 986 (7th Cir. 1991). "Vigorous enforcement of civil rights laws is the policy underlying the stringent standard required of prevailing *defendants* who seek payment of their attorney's fees." *Id.* (citing *Christiansburg*, 434 U.S. at 422). Defendant has not met this stringent standard, and accordingly, Defendant's Amended Motion for Attorney's Fees and Expenses [Docket No. 89] is **DENIED**.

IT IS SO ORDERED.

Date:     8/26/2022

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Daniel P. Dietrich
GUNSTER, YOAKLEY & STEWART, P.A.
ddietrich@gunster.com

John H. Haskin
JOHN H. HASKIN & ASSOCIATES, LLC
jhaskin@jhaskinlaw.com

Greg S. Morin
MONTGOMERY, ELSNER & PARDIECK, LLP
gmorin@meplegal.com

Jounice L. Nealy-Brown
GUNTER, YOAKLEY & STEWART, P.A.
jnealy-brown@gunster.com

Eduardo A. Suarez-Solar
GUNSTER, YOAKLEY & STEWART, P.A.
esuarez@gunster.com